**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| MELVIN HARRIS, | Case No. 1:24-cv-01478 JLT CDB |
| Plaintiff, | ORDER DENYING MOTION FOR LEAVE TO AMEND AND REMAND |
| v. | (Doc. 6) |
| DG STRATEGIC VII, LLC, et al., | |
| Defendants. | |

Melvin Harris seeks to amend his complaint against DG Strategic VII, LLC, with allegations and claims against another California citizen and to remand the case to state court. The motion is **DENIED**.

**BACKGROUND**

Harris filed this case against DG in state court in October 2024. (Doc. 1-1) He alleges he worked for DG as a senior operations manager in the company's office in Lebec, California, for about a year starting in 2023. (*Id.* ¶¶ 16, 22.) According to his complaint, his manager, a man he originally identified as "Jose Parra," became hostile toward him and began criticizing his work in front of other employees in early 2024. (*Id.* ¶ 17.) He also alleges that Parra misspelled "Lunch" as "Lynch" in an office-wide email. (*Id.*) This made Harris, a Black man, feel quite "uncomfortable," given "the historical connotation of lynching and its impact on African

1

Americans in this county." (*Id.*)  Harris claims he brought the apparent misspelling to Parra's attention and that Parra said he would fix it but never did.  (*Id.*)  Harris also alleges that other unidentified DG employees later questioned him about his ability to speak Spanish, inquired about his national origin and race, asked to see a photo of his mother, then "remarked" that he "did not resemble her because of his 'black skin.'"  (*Id.* ¶ 18.)

In addition to these allegations, Harris's complaint describes how he had previously brought a different set of related concerns to the attention of a human resources manager named Genesis Tapia.  (*See id.* ¶ 19.)  He alleges Tapia and DG did not "take meaningful remedial action" in response to his requests for help.  (*Id.* ¶ 20.)  He filed a complaint with the federal Equal Employment Opportunity Commission.  (*Id.* ¶ 21.)  A few months later, Harris alleges Tapia "summoned" him to her office and told him that he had been fired.  (*Id.* ¶ 22.)  By his account, she explicitly connected his termination to his EEOC complaint.  (*Id.*)

Harris's complaint names one defendant (DG) and includes claims for discrimination, harassment, wrongful termination, retaliation, and unfair competition under California law.  (*Id.* ¶¶ 23–61.)  DG answered the complaint and removed the case to this Court in December 2024, about two months after it was filed, based on its allegations of the parties' complete diversity (California and Tennessee) and the amount in controversy, citing 28 U.S.C. §§ 1332, 1441 and 1446.  (Doc. 1.)

DG's potential liability and the veracity of Harris's allegations are questions for another day.  The parties' current dispute focuses on the forum.  About a month after DG filed its notice of removal, Harris's counsel emailed DG's counsel to ask if DG would agree to add Tapia as a defendant and remand the case to the state court.  (Doc. 6-1 at 36.)  DG's counsel responded that DG was not amendable to the proposed stipulation.  (*Id.* at 37.)  Later that day, Harris's counsel emailed back to explain that he had intended to propose Parra as the new defendant, not Tapia.  (*Id.* at 38.)  He then filed a motion for leave to amend his complaint to add allegations against Parra and to remand the case to state court.  (*See* Docs. 3–6.)

Harris attached a proposed amended complaint to his motion.  It includes essentially three changes: (1) he would allege that Parra is a California citizen and that his first name is "Chris,"

2

not "Jose"; (2) he would allege that Parra was not his direct supervisor, but rather a manager in a different department; and (3) he would allege that Parra nevertheless targeted his performance and instructed his subordinances to "watch" Harris and report back if Harris made any mistakes. (Doc. 6-1 at 21, 25.)  The court informed the parties it would decide the matter on the papers (Doc. 9) and briefing is now complete (*see* Docs. 8–10).

## STANDARD OF DECISION

When, as in this case, the plaintiff in an action that was removed to federal court under the diversity jurisdiction statute seeks the court's permission to add allegations against a defendant with the same state citizenship, the law gives the court a choice: deny the plaintiff's request and maintain jurisdiction or grant the request and remand the case to state court.  28 U.S.C. § 1447(e). The language of this statute "is couched in permissive terms," so the decision "is left to the discretion of the district court." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998).

The Ninth Circuit has confirmed that district courts are within their discretion to consider the potential prejudice to the moving plaintiff and the equities in general, but it has not otherwise established any particular legal test for district courts to apply. *See id.*  In the absence of specific controlling authority, California federal district courts have considered a variety of factors when exercising their discretion: whether the new defendant must be joined under the terms of Federal Rule of Civil Procedure 19(a), ignoring, of course, that Rule 19(a) does not permit a joinder if it would deprive the court of subject matter jurisdiction; whether a statute of limitations would bar a new case against the new defendant in state court; whether the request follows an unexplained delay; whether it appears the only reason to add the new defendant is to deprive the federal court of jurisdiction; whether the claims against the new defendant appear to be valid; and whether denying the request would prejudice the plaintiff.  *See, e.g.*, *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000); *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999).  None of these factors amounts to a necessary condition, and just one might prove to be decisive, but district courts often weigh them all.  *See, e.g.*, *IBC*, 125 F. Supp. 2d at 1012–13.

3

**DISCUSSION**

Two considerations predominate the application of these factors here. First, the timing of Harris's proposed amendment, its meager contents, and his explanations for his motion all suggest strongly that he is motivated primarily by a desire to return to the state court, not to obtain relief for individual wrongdoing by Parra. It is unclear why, if it was important to him to pursue an individual claim against Harris, he did not do so originally. The new allegations and claim that Harris proposes to pursue against Parra are not meaningfully different from those he included in his original complaint. Nothing about those new allegations suggests Harris could not have included them in the complaint he filed in state court. He does not contend that DG or another person concealed information from him. His counsel explains only that he "continued to investigate the facts and circumstances surrounding this case" and that "additional facts came to light." (Doc. 6 at 7.) He does not say what those facts were, how they came to light, why he did not discover them sooner, and why they were essential to a new claim against Parra individually and directly.

Second, aside from a potential remand, it is unclear what Harris has to gain by adding an individual harassment claim against Parra to this case. He believes he could pursue that claim against Parra in state court in a separate action, and DG does not contend otherwise. (*See* Docs. 6 at 11; 8 at 10.) A parallel action in a different forum would not be a particularly efficient way to litigate, but Harris has not demonstrated that it would cause him any particular hardship, and as noted, he could likely have pursued a unified case against all of the defendants in state court from the start but did not. A related question is whether Parra is a "necessary party" under Rule 19(a). That seems unlikely as well. Harris does not contend persuasively that he can obtain only incomplete relief in Parra's absence. His allegations imply instead that DG would be liable for Parra's actions. He alleges, for example, that Parra was acting as DG's agent and in concert with it and had at least some managerial authority over Harris. (Doc. 6-1 at 22.) Nor do Harris's allegations against Parra support his assertion that Parra should be joined in the case as the "principal architect" of the alleged discrimination and harassment. (Doc. 6 at 9.) As Harris describes his former workplace, Parra was just one of many DG employees who contributed to

4

the harassing environment.  And as for Parra's own interests, Harris's allegations do not imply that Parra will be without recourse or at any meaningful disadvantage if he remains absent or must defend himself separately in a parallel state court action.

With all this said, the Court cannot agree with DG that the proposed claim against Parra is facially invalid.  (*See* Doc. 8 at 8–9, 13, 15.)  Harris's relatively sparse factual allegations make it difficult to assess the validity of a claim against Parra with any confidence.  At most this factor is neutral.  *See Herrera v. Walmart, Inc.*, No. 24-00209, 2026 WL 101633, at *4 (E.D. Cal. Jan. 14, 2026) (finding boilerplate assertions against new defendant weighed against proposed amendment); *Calderon v. Lowe's Home Centers, LLC*, No. 15-01140, 2015 WL 3889289, at *6 (C.D. Cal. June 24, 2015) (same)).

On the whole, this case resembles many others in which federal district courts have denied motions to amend that seem to be motivated primarily, if not entirely, by a plaintiff's desire to return to the state court.  *See, e.g.*, *Herrera*, 2026 WL 101633, at *4–5; *Baker v. Nutrien Ag Sols., Inc.*, No. 21-01490, 2022 WL 3142065, at *7 (E.D. Cal. Aug. 5, 2022); *Munoz v. Walmart Inc.*, No. 19-08333, 2020 WL 91499, at *3 (C.D. Cal. Jan. 8, 2020); *Calderon*, 2015 WL 3889289, at *4–6; *Bakshi v. Bayer Healthcare, LLC*, No. 07-00881, 2007 WL 1232049, at *5 (N.D. Cal. Apr. 26, 2007).  The Court will do the same here.  Plaintiffs may legitimately prefer to litigate in state court, and they can hardly be faulted for asserting claims that permit them to do so.  By longstanding tradition, a "plaintiff is 'the master of his complaint' and may 'avoid federal jurisdiction,'" if he prefers.  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000)).  But defendants can remove cases to federal court under federal statutory law if the case could have been filed in federal court in the first place.  *See* 28 U.S.C. § 1441.  Federal district courts have therefore looked "with particular care" at claims that the plaintiff could have pursued in state court, but did not, especially questionable claims without much apparent benefit or purpose.  *See Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1376 (9th Cir. 1980).

///

///

5

## CONCLUSION

The motion for leave to amend and remand (Doc. 6) is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 12, 2026**

UNITED STATES DISTRICT JUDGE

6